FILED BY LC D.C.
MAY 26 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

MICHAEL BARRETTE
2181 SOUTH BROCKSMITH ROAD
FORT PIERCE FLORIDA 34945
772-708-4791

VS

THE UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF FLORIDA
101 S HIGHWAY 1 FORT PIERCE FLORIDA

This is a civil action for damages for medical malpractice and negligence brought against the defendant, the United States of America. This action arises out of the negligent medical care ,treatment, and surgical services provided to me Michael Barrette by two doctors acting as employes of the United States of America at the West Palm Beach VA. Therefore the United States of America is liable for their negligence pursuant to the Federal Tort Claims Act.

February 10,2023 Dr.Steriovski operated on me to remove broken hardware on my left ankle. In the recovery room I noticed blood seeping through the surgical dressing. The nurse was notified, she called the surgeon and the hospitalist on duty. The nurse was told to wrap more gauze around the already blood saturated dressing. February 11 I was discharged with my ankle bleeding. February 13, Dr. Steriovski took the blood saturated gauze off my ankle which reveled complete dehiscence and the start of osteomyelitis. I was placed on a wound pump. This proves without a doubt that Dr.Steriovski was neglectful, in response to excess bleeding after my operation.

May 10, I was operated on again to remove a screw from my heel and placed on a picc line for IV. antibiotics. Dr.Nestor Quezada the infectious disease doctor is the one who ordered the picc line to address my infection. I was on a picc line for six weeks .
June 29, I had my discharge appointment with Dr. Quezada. He never ordered blood work or even looked at my ankle, if he had followed basic discharge protocol by doing a blood test or even examined my ankle it would have shown sepsis.
Dr.Quezada's gross medical neglect caused me to call 911 July 4, just 5 short days after I was discharged from his care. I called 911 on July 4 in horrible pain with a temperature, I was brought to Lawnwood Trama Hospital in Fort Pierce. Because of sepsis I had a two stage amputation starting July 7. I was hospitalized for a week and a half, then was transferred to encompass rehabilitation for another week and a half.
Both doctors breached the basic duty of care by not following basic protocol done by doctors who practice medicine in the same field every day. Causation is clear neglect by the VA doctors who went about their duty's without the care they owed to me. As result I suffer from severe pain, emotional distress, permanent disfigurement, and loss of enjoyment of life. I am seeking four million in damages.

Michael Barrette

[signature], May 26 2026

**5/11/2026**

***From The Desk of Dr. Steven Feder:***

**Re: Specialist Michael John Barrette**

To Whom it May Concern,

This letter represents an independent review of partial medical records of Specialist Michael John Barrette, encompassing the dates December 2022 through July 2023. This review was done without bias, and reflects solely my voluntary input as a practicing Physician with over two decades spent in Quality Improvement in the medical field.

Based on the records provided to me, it appears that there were missed opportunities that could possibly have prevented Specialist Barrette's emergent presentation in septic shock (July 2023), and the subsequent need for urgent amputation of his lower left leg, an outcome that left him significantly disabled for the remainder of his life. Further, the suffering that he endured for several months following his initial evaluation in December 2022 and then his surgery in February 2023 deserves closer scrutiny as well. At the very least, it is my opinion that Specialist Barrette deserves a full opportunity to present his case before the Court. The records provided me were somewhat limited but a basic timeline is noted below.

***Timeline:***

December 2022: Patient presented with severe L ankle pain. CT without contrast of the left ankle was done which demonstrated broken hardware from a distal fibular resection done several years previously. Patient was referred to Podiatry for repair/revision.

February 10, 2023: Surgery was done to remove broken hardware. Patient developed significant post-operative bleeding at the surgical site. Patient reported that he was concerned and the RN notified the Surgeon, who advised by phone to provide more gauze dressing. Further gauze was applied upon post-operative admission. Despite persistent bleeding, the site was never un-dressed, cleansed, re-dressed or examined in the post-operative period by the Surgeon or the attending Hospitalist. I do not see a record of the patient being evaluated by a wound care team during that admission. Specialist Barette expressed concern about the bleeding but was discharged the following day with the same blood-soaked gauze in place. No blood count or labs were seen in my review in the post-operative period. Patient reported that the dressing was saturated with blood and actively bleeding at discharge. He was scheduled for follow up three days later on 2/13 with the Surgeon.

February 13, 2023: Follow up appointment revealed a completely dehisced, open surgical site with copious partially dried blood and stagnant blood held in place by soaked gauze. There were concerns expressed regarding secondary infection and possible osteomyelitis and a wound pump was placed. Visiting Nurse was put in place for twice weekly visits to clean the wound and change the pump.

March 2023: Shortly after wound pump and VNA were discontinued, patient was re-admitted for left ankle swelling and pain. Patient reports to being placed on pain medication and antibiotics. Limited records were available to me for this admission.

May 4, 2023: Patient again re-admitted for L ankle edema and erythema and pain. A visible screw fragment. Was noted to be protruding from the L heel at that time. There were no records of lab work or imaging available to me for the period between February 2023 and this admission in May (though there may be some available through discovery).

May 10, 2023: Surgery was done for removal of further hardware and for hardware piercing heel skin and soft tissue through the ankle mortice. IV antibiotics were started and patient was admitted for six days and a PICC line was placed. Patient discharged on May 16 with PICC line in place. He was put under the Care of Surgery and Infectious Disease Specialists.

June 16, 2023: A 4-week IV antibiotic course was completed and the PICC line removed. Patient was instructed to follow up 2 weeks later on June 29 2023.

June 29, 2023: Seen for outpatient Infectious Disease follow up, still with complaints of pain and some swelling by Dr. Quezada. At that visit he was discharged from the Infectious Disease service. Patient states that he was not examined by Dr. Quezada (despite there being an exam documented in the progress notes), and no follow up imaging or labs were done to confirm the appropriateness of discharge.

Patient had increasing pain the days following that visit and 5 days later on July 4, 2023, patient accessed 911 due to syncope/severe pain/chills/fever/waning consciousness. He was determined to have fulminant sepsis of the left ankle and was reported to be in septic shock. He was evaluated at Lawnwood Hospital Trauma Unit and was admitted to be treated for sepsis at which time a below knee amputation was deemed the most appropriate course of action.

There are several questions/concerns that arise from this timeline and the patient's clinical course that should warrant a closer look and an ability for Specialist Barrette to present his case.

Dr. Steve Feder

QI Coordinator-Primary Care
Martha's Vineyard Hospital
Mass General Brigham
1 Hospital Rd, POB 1477
Oak Bluffs, MA 02557 (508) 693-3732
mvhospital.org; massgeneral.org

May 1, 2026

To whom it may concern, my name is Tetyana Barrette RN. I am writing this statement on behalf of Michael Barrette. February 10,2023 Dr. Steriovski operated on Michael to remove broken screws in his left ankle. In recovery I noticed a large amount of blood seeping through the surgical dressing around the ankle. I notified the nurse on duty who verified the blood saturated ankle. The nurse contacted the surgeon and the hospitalist whose medical response was to wrap more gauze around the wound encapsulating the old blood in a moist wrapping, thus causing a breeding ground for infection. Michael was discharged the next day February 11, with instructions to keep dressing intact. February 13, Dr.Stereriovski took the stagnant dressing off only to find complete dehiscence to the bone and the start of infection. No blood work was done at that time to check and see if infection had begun. Michael was immediately placed on a wound pump for the next six weeks. A visiting nurse came three times a week to clean the wound and reset the wound pump.

In March Michael was admitted to the VA in West Palm Beach FL for swelling and osteomyelitis, he was discharged a short time afterward. May 4, he was admitted again to the VA West Palm Beach for pain and infection. May 10 Michael was operated on again to remove a screw from his heel. He was placed on a picc line for I.V. antibiotics ordered by infectious disease doctor Nestor Quezada MD. June 16 Michael finished his six week treatment of IV antibiotics. June 29, he went for a discharge appointment with Dr. Quezada. Dr. Quezada never ordered blood work or visually looked at Michaels ankle. If he did order the tests and looked at his infected ankle it would have been made clear that Michael was suffering from sepsis. July 4, I called 911 because Michael was in enormous pain and had a temperature. July 7, Michael was amputated below the knee for sepsis. He was hospitalized for a week and a half then transferred to encompass rehabilitation for another week and a half.

From a medical standpoint the facts are clear that Dr.Steriovski and Dr.Quezada are both to blame for medical neglect. Because of medical malpractice Michael must live the rest of his life in pain. He will be forever handicap with only one leg. He suffers every day not being to enjoy the things we take for granted every day.

Tetyana Barrette Tetyana Barrette

VA | U.S. Department of Veterans Affairs
Office of General Counsel

Torts Law Group (021)
810 Vermont Avenue, NW
Washington, DC 20420
Email: ogc.torts@va.gov

In Reply Refer To: GCL539409

Certified Mail 7013 0600 0001 9428 8656

December 30, 2025

Michael John Barrette
2181 South Brocksmith Rd.
Fort Pierce, FL 34945

Re: Administrative Tort Claim

Dear Mr. Barrette:

The Department of Veterans Affairs (VA) has thoroughly investigated the facts and circumstances surrounding your administrative tort claim. Our adjudication of your claim included a review of your medical records, a review of your claim by independent medical reviewers, and interviews of medical personnel.

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680, under which you filed the claim, provides for monetary compensation when a Government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission. Medical negligence means there was a breach in the standard of care and that breach proximately caused an injury. The standard of care is the level at which similarly qualified medical professionals would have managed the care under the same or similar circumstances.

Our review concluded there was no negligent or wrongful act on the part of a VA employee acting within the scope of employment that caused compensable harm. Accordingly, we deny the claim.

If you are dissatisfied with the denial of the claim, you may file suit directly under the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680. The FTCA provides that when an agency denies an administrative tort claim, the claimant may seek judicial relief in a Federal District Court. You must initiate the suit within six (6) months of the mailing of this notice as shown by the date of this denial (28 U.S.C. § 2401(b)). In any lawsuit, the proper party defendant is the United States, not the Department of Veterans Affairs.

You may also want to inquire into whether you qualify for VA benefits under 38 U.S.C. § 1151 (called an "1151 claim") as determined by the Veterans Benefits Administration (VBA). For more information on submitting an 1151 claim please visit https://www.va.gov/disability/eligibility/special-claims/1151-claims-title-38/.

Please note that FTCA claims are governed by a combination of Federal and state laws. Some state laws may limit or bar a claim or lawsuit. VA attorneys handling FTCA

claims work for the Federal government and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely,

*Chief Counsel*
Torts Law Group